Citation Nr: 1708256 
Decision Date: 03/17/17 Archive Date: 04/03/17

DOCKET NO. 14-39 956 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to an initial disability rating in excess of 20 percent for service-connected degenerative joint disease with myositis of the lumbar spine. 

2. Entitlement to service connection for an acquired psychiatric disorder. 

3. Entitlement to service connection for a cervical spine disorder.

4. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Kathy A. Lieberman, Attorney-at-Law



ATTORNEY FOR THE BOARD

S.M. Kreitlow


INTRODUCTION

The Veteran had active military service from August 1952 to July 1954. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico.

The Veteran's appeal was previously before the Board in November 2015 at which time the Board issued a decision denying all the issues on appeal, which included not only the four issues listed on the Title page of this decision but also claims for service connection for radiculopathy of all four extremities, neuropathy of all four extremities, bilateral hearing loss and loss of vision, as well as a claim for special monthly compensation based on the need of aid and attendance or housebound status. The Veteran appealed to the Court of Appeals for Veterans Claims (Court). Pursuant to a Joint Motion for Partial Remand (JMPR), in August 2016, the Court vacated the Board's November 2015 decision only as to the issues listed on the Title page hereof and remanded those issues subject to the JMPR. As to the other issues in the November 2015 Board decision, the Veteran specifically abandoned those issues before the Court in the JMPR. Consequently, the Board's November 2015 denial of those issues is final.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of service connection for a cervical spine disorder and an acquired psychiatric disorder and entitlement to a TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).
FINDINGS OF FACT

1. The Veteran's degenerative joint disease with myositis of the lumbar spine (hereafter "lumbar spine disability") is manifested by forward flexion limited to 15 degrees by pain; and functional loss/impairment of the thoracolumbar spine including less movement than normal, pain on movement, instability of station, disturbance of locomotion and interference with sitting, standing and/or weight-bearing; but is not productive of ankylosis of any segment of the spine. 

2. The Veteran's lumbar spine disability does not represent an exceptional disability picture.


CONCLUSION OF LAW

The criteria for an initial disability rating of 40 percent, but no higher, for the Veteran's service-connected lumbar spine disability are met. 38 U.S.C.A. §§ 1155, 5103, 5103A and 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.40, 4.45, 4.59 and 4.71a, Diagnostic Code 5242 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Notice and Assistance Requirements

Initially the Board finds that, with respect to the claim discussed herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). Neither the Veteran nor his representative has argued otherwise.

However, the Board notes that, while the Veteran's appeal was pending before the Court, it issued a decision in Correia v. McDonald, 28 Vet. App. 158 (2016). In that decision, the Court held that the final sentence of 38 C.F.R. § 4.59 creates a requirement that certain range of motion testing be conducted whenever possible in cases of joint disabilities. The final sentence of § 4.59 provides that "[t]he joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." The Court found that, to be adequate, a VA examination of the joints must, wherever possible, include the results of the range of motion testing described in the final sentence of § 4.59. 

In the present case, however, the Board finds that remand is not necessary for a new VA examination as it is granting an increase to the highest evaluation under the rating criteria based upon limitation of motion of the thoracolumbar spine. In order for the Veteran to obtain a higher rating, the evidence would have to show ankylosis of either part of or the entire spine, which, as discussed below, it does not. Ankylosis is where there is fixation of a spinal segment (either the entire cervical spine or the entire thoracolumbar spine) or the entire spine, which can be in a neutral position (favorable ankylosis) or in either flexion or extension (unfavorable ankylosis). See 38 C.F.R. § 3.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (5). If the spine is fixed in position, there is no motion of the spine. Consequently, the question raised by the Court in Correia is moot as there is no motion of the spine or spinal segment when there is ankylosis. Thus, remanding for a new examination at this point would not provide any additional information upon which a higher disability rating could be assessed as the Board is granting the Veteran the highest disability rating allowed based upon limitation of motion of the thoracolumbar spine. Although an argument could be made that an extra-schedular rating could still be considered, as discussed in further detail below, the Board has considered all of the Veteran's symptoms in evaluating his service-connected disability and does not find that any are outside the rating schedule despite the attorney's argument and, therefore, does not find that argument prevailing as a reason to remand solely for a new VA examination. 

Furthermore, the Board finds that remanding for a new VA examination under Correia would likely be futile as the Veteran is bedridden and would likely be unable to perform the necessary range of motion testing required to comply with the Correia requirements. VA treatment records show the Veteran has Multiple System Atrophy with Predominant Parkinsonism (MSA-P), which he was first evaluated for in March 2010 and started with symptoms primarily involving weakness in his lower extremities (primarily his left one) and gait and balance impairment along with cogwheel rigidity in his bilateral upper extremities. The last VA treatment records from October 2014 show the Veteran has become very limited in mobility and is wheelchair bound due to impaired standing balance. According to his attorney's most recent statement from October 26, 2016, the Veteran is bedridden and would only be able to appear for VA examination if brought by ambulance. 

Furthermore, the most recent VA treatment records show the Veteran has poor balance, is unable to tolerate standing for more than a minute or two, and is unable to walk without total assistance. See October 15, 2014 Occupational Therapy Consultation note. In addition, the Veteran was unable to perform repetitive testing at the May 2013 VA examination, which the examiner put down to his poor balance. Specifically the examiner commented that the Veteran had multiple medical conditions, such as Parkinson Disease, which interfered with the complete evaluation of strength due to cogwheel movements and tremor. 

Consequently, it is questionable whether the Veteran would be able to appear for a VA examination if one is scheduled. Even if he were able to appear, it is unlikely he would be able to complete the examination and perform the multiple sets of range of motion testing needed to comply with the Correia requirements given that he was unable to perform multiple sets of range of motion testing in May 2013. Thus, remanding at this time for a VA examination in which the Veteran would have to perform repetitive testing when it is clear that his MSA-P has worsened and he now bedridden and unable to stand for more than a minute or two would be of no value as it would not result in any additional usable evidence to evaluate his disability.

Thus, the Board finds that it may proceed to adjudicate the Veteran's claim without prejudice to him.


II. Analysis

The Veteran was granted service connection for his lumbar spine disability in the May 2013 rating decision on appeal, which was evaluated as 20 percent disabling by the RO. The Veteran has disagreed with this initial disability rating assigned to his now service-connected disability. The Veteran's attorney argues that the current rating and schedular criteria does not encompass all of the Veteran's symptoms and thus an extra-schedular rating should be considered. After considering all the evidence and the associated law, the Board finds that a higher initial disability rating of 40 percent is warranted taking into consideration all of the Veteran's symptoms with application of the rating criteria and the DeLuca factors. 

Disability ratings are intended to compensate impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155. Separate diagnostic codes identify the various disabilities. Id. Evaluation of a service-connected disorder requires a review of the veteran's entire medical history regarding that disorder. 38 C.F.R. §§ 4.1 and 4.2. 

It is also necessary to evaluate the disability from the point of view of the veteran working or seeking work, 38 C.F.R. § 4.2, and to resolve any reasonable doubt regarding the extent of the disability in the veteran's favor, 38 C.F.R. § 4.3. If there is a question as to which evaluation to apply to the veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

38 U.S.C.A. § 1154(a) requires that the VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim to disability benefits. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). When analyzing lay evidence, the Board should assess the evidence and determine whether the disability claimed is of the type for which lay evidence is competent. See Davidson, 581 F.3d at 1313; Kahana v. Shinseki, 24 Vet. App. 428 (2011).

Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1). Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2).

The Veteran's lumbar spine disability is evaluated under Diagnostic Code 5242 for degenerative arthritis of the spine. Spine disabilities are rated under the General Rating Formula for Diseases and Injuries of the Spine. 38 C.F.R. § 4.71a. When rating under the General Rating Formula for Diseases and Injuries of the Spine, any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, are evaluated separately under an appropriate diagnostic code. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (1). 

With or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease, the revised rating criteria provide a 100 percent rating for unfavorable ankylosis of the entire spine; and a 50 percent rating for unfavorable ankylosis of the entire thoracolumbar spine. The criteria for a 40 percent rating require forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 10 percent rating is provided for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine. 

The rating criteria define normal range of motion for the various spinal segments for VA compensation purposes. Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexions are zero to 30 degrees, and left and right lateral rotations are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion are the maximum that can be used for calculation of the combined range of motion. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (2). 

The fact that the criteria include symptoms such as pain, stiffness, aching, etc., if present, means that evaluations based on pain alone are not appropriate, unless there is specific nerve root pain, for example, that could be evaluated under the neurological sections of the rating schedule. See 68 Fed. Reg. 51,455 (Aug. 27, 2003). For example, impairment of the sciatic nerve is addressed under Diagnostic Code 8520. [As noted above, claims for service connection for radiculopathy of the lower extremities were abandoned before the Court in the JMPR.].

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note (5). Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id. 

The Veteran's claim for a higher evaluation is an original claim that was placed in appellate status by his disagreement with the initial rating award. In these circumstances, separate ratings may be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Furthermore, in evaluating musculoskeletal disabilities, the Board must also consider whether a higher disability evaluation is warranted on the basis of functional loss due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45; see DeLuca v. Brown, 8 Vet. App. 202 (1995). Functional loss contemplates the inability of the body to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance, and must be manifested by adequate evidence of disabling pathology, especially when it is due to pain. 38 C.F.R. § 4.40. A part that becomes painful on use must be regarded as seriously disabled. Id.; see also DeLuca. As regards the joints, factors to be evaluated include more movement than normal, weakened movement, excess fatigability, incoordination, and pain on movement. 38 C.F.R. § 4.45(f). 

"Pain itself does not rise to the level of functional loss as contemplated by the VA regulations applicable to the musculoskeletal system. Pain in, like deformity of or insufficient nerve supply to, a particular joint may result in functional loss, but only if it limits the ability 'to perform the normal working movements of the body with normal excursion, strength, speed, coordination[, or] endurance.'" Mitchell v. Shinseki, 25 Vet. App. 32, 38 (2011) (citing 38 C.F.R. § 4.40).

VA treatment records merely show complaints of intermittent low back pain improved with the use of Tramadol and sitting, with radiological evidence of spondylosis and degenerative changes of the lumbar spine. VA treatment records also show the Veteran has used a Canadian crutch to assist with balance due to problems with his knees as early as 2008. See August 6, 2008 Hematology and Oncology note. In addition, the VA treatment records show the Veteran is diagnosed to have MSA-P. The Veteran was initially evaluated for this in March 2010 for complaints of a feeling of heaviness of his feet and legs (left greater than right) for two years. He was found to have moderate increased tone and cogwheel rigidity of the bilateral upper extremities with slight decreased facial expression and not fluency upon ambulation. See March 3, 2010 PM&R Consultation note. He underwent significant balance and gait training therapies for abnormality of gait and poor coordination/control of left lower extremity. He was noted to have a "freezing phenomena" involving the left lower extremity and postural instability upon ambulation. 

On Neurology follow up in October 2011, the Veteran was noted to have had frequent falls over the prior year secondary to weak left hemibody, with problems starting movement and feeling stuck to the floor. He also had tremors of the bilateral upper extremities, left more than right, with action but not rest; slowness of movement and changes in tone of voice. He denied stiffness, lot tone, visual changes, dizziness or unbalance. He further complained of chronic back pain without relief. The assessment was that the objective findings of cogwheel rigidity of the bilateral upper extremities, intention tremors, and bilateral proximal lower extremity weakness were suggestive of Parkinsonism, but that he did not have Parkinson Disease. The physician further noted that the Veteran also has lumbar stenosis from L1 to L5 that could be contributing to weakness and gait problems. In contrast, a February 2014 Hemacology and Oncology note indicates that the Veteran's complaints of low back pain are mostly structural as he has back pain from being seated most of the time and from not exercising his body. 

Furthermore, the Veteran underwent VA examination in May 2013. He reported having pain in his lower back and left leg at an intensity of 10 on the pain scale of 1 to 10, and using Tramadol for pain relief. However, he also reported he was unable to walk due to Parkinson's, which affects his left extremities with tremors and weakness, and that he has severe balance problems. On examination, forward flexion was limited to 40 degrees with objective evidence of painful motion beginning at 15 degrees. Extension was limited to 0 degrees. Right and left lateral flexion, as well as right lateral rotation, was limited to 10 degrees with objective evidence of painful motion beginning at 5 degrees. Left lateral rotation was limited to 5 degrees. The Veteran was unable to perform repetitive use testing with three repetitions because of his poor balance. The examiner noted the Veteran had the following functional loss and/or impairments: less movement than normal, pain on movement, instability of station, disturbance of locomotion, and interference with sitting, standing and/or weight-bearing. The examiner further commented that the Veteran had increase muscle tone at the lumbar area, as well as guarding and/or muscle spasm that did not result in an abnormal gait or spinal contour. The examiner remarked that the Veteran has multiple medical conditions, such as Parkinson Disease, which interfered with the complete evaluation of strength due to cogwheel movements and tremors. He presented with a shuffling gait and poor balance and he drove a scooter with mild difficulty.

Also, in support of his claim, the Veteran submitted a statement dated in September 2011 from a private physician. This physician stated that the Veteran has continuous strong back pain with a "sensation of 'locking" which limits his movements and pain with range of movements." She stated that he is no longer able to tolerate prolonged sitting or standing and has difficulty lifting heavy things, bending, squatting, crawling, climbing, reaching, prolonged walking, and stair climbing. He has episodes of stiffness of his back with muscle spasm, pain, fatigue, numbness and pinprick sensation at lower extremities, especially his left leg. He presents abnormality of gait and needs a wheelchair and scooter to help in his transportation. Imaging studies show degenerative disc disease. 

After considering all the evidence and resolving reasonable doubt in the Veteran's favor, the Board finds the Veteran's disability picture more nearly approximates the criteria for a 40 percent disability rating. The VA examiner found that there was objective evidence of painful motion on forward flexion starting at 15 degrees and the Veteran only had a total of 40 degrees of forward flexion. A 40 percent disability rating is warranted for limitation of forward flexion of the thoracolumbar spine of 30 degrees or less. The Board acknowledges that pain alone is not considered unless it causes functional loss or limitation. Here the Veteran also had increase muscle tone at the lumbar area with guarding and/or muscle spasm, although not enough to cause an abnormal gait or spinal contour. Furthermore, the examiner stated that Veteran had functional loss and/or impairment of the thoracolumbar spine in that he had less movement than normal and pain on movement. Thus, the examiner stated that the pain on movement did cause functional loss. 

Moreover, the examiner stated that the Veteran also had instability of station, disturbance of locomotion and interference with sitting, standing and/or weight-bearing. The Board notes that, unlike the Veteran's attorney argues, these impairments are considered to be part of the rating schedule under 38 C.F.R. §§ 4.40 and 4.45 and DeLuca. 

Consequently, when considering that the Veteran's limited forward flexion with pain and the functional loss and/or impairments caused by his lumbar spine disability, the Board finds that the evidence is consistent with a disability picture of limitation of flexion of the thoracolumbar spine of 30 degrees or less. Thus, the Board finds that a disability rating of 40 percent is warranted for the Veteran's service-connected lumbar spine disability. A higher disability rating, however, is not warranted as the evidence clearly fails to demonstrate that the Veteran has unfavorable ankylosis of the thoracolumbar spine (warranting a 50 percent disability rating) or ankylosis, whether favorable or unfavorable, of the entire spine (warranting a 100 percent disability rating). As noted above, claims for service connection for radiculopathy of the lower extremities were abandoned before the Court in the JMPR.

Finally, the Board has considered whether a referral for extra-schedular consideration is warranted under 38 C.F.R. § 3.321(b). Referral for extra-schedular consideration is warranted when (1) the service-connected disability presents such an exceptional disability picture as to render the rating schedule inadequate to evaluate the disability (i.e., the disability is so extraordinary or unusual that it is not contemplated by the rating criteria) and (2) the exceptional disability picture exhibits other related factors (i.e., "governing norms" such as marked interference with employment or frequent periods of hospitalization). Thun v. Peake, 22 Vet. App. 111, 115 (2008). If both of these factors are met, then the case must be referred to the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extra-schedular rating. Id.

In the present case, the Board finds that the evidence does not show that the Veteran's disability is so extraordinary or unusual as to not be contemplated by the rating criteria. As discussed above, the Veteran's lumbar spine disability is essentially manifested by pain and limitation of motion causing functional loss and/or impairment of less movement than normal and pain on movement. The May 2013 VA examiner also indicated the Veteran also had additional functional losses and/or impairments including instability of station, disturbance of locomotion and interference with sitting, standing and/or weight-bearing. Although primarily caused by his nonservice-connected MSA-P, there is evidence that his lumbar spine disability could also be contributing to his gait and balance problems and, thus, these functional losses and/or impairments were considered when evaluating the Veteran's service-connected lumbar spine disability under the rating schedule. Although not specifically listed in the rating criteria, these functional losses and/or impairments still must be considered in evaluating all musculoskeletal disability rating claims as part of the schedular evaluation pursuant to 38 C.F.R. § 4.40. See DeLuca, 8 Vet. App. 202. Thus, the Board finds that the Veteran's instability of station, disturbance of locomotion and interference with sitting, standing and/or weight-bearing are not symptoms that are unusual or extraordinary, nor are they outside of the rating schedule. Furthermore, the Board has already accounted for all of the Veteran's symptoms in evaluating his disability under the schedular criteria. Consequently, the Board finds that the rating schedule is clearly adequate to evaluate the Veteran's service-connected lumbar spine disability and referral for extra-schedular consideration is not warranted. 

Therefore, after considering all the evidence of record, the Board finds that the preponderance of the evidence is against finding that an initial disability rating of 40 percent, but no higher, is warranted for the Veteran's service-connected lumbar spine disability. The Board has considered the doctrine of reasonable doubt, but finds that the record does not provide an approximate balance of negative and positive evidence on the merits. The Veteran's appeal is, therefore, granted to that extent only. Gilbert v. Derwinski, 1 Vet. App. 49, 57-58 (1990); 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Entitlement to an initial disability rating of 40 percent for service-connected lumbar spine disability is granted, subject to controlling regulations governing the payment of monetary benefits.


REMAND

The Board remands the Veteran's claims for service connection for a cervical spine disorder and an acquired psychiatric disorder, as well as entitlement to a TDIU, for additional development in order to comply with the JMPR and VA duty to assist the Veteran in developing his claims. 

Initially, the Board notes that it appears that the Veteran gets almost all his treatment at the VA Medical Center in San Juan. The last VA treatment records in his claims file are from October 2014. Thus, on remand, any recent treatment records should be obtained as they are already considered constructively part of the claims file. See Bell v. Derwinski, 2 Vet. App. 611, 613 (1992). 

In regard to the cervical spine disorder, the Board previously denied the Veteran's claim on the basis of no current disability. In the August 2016 JMPR, however, the parties agreed that the Board erred by providing inadequate reasons and bases regarding why the Veteran was not given an examination. Rather the parties found that the criteria in McLendon v. Nicholson, 20 Vet. App. 79 (2006), for when a VA examination is warranted appear to have been met. 

A medical examination or medical opinion is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim but (1) contains competent lay or medical evidence of a current diagnosed disability or persistent or recurrent symptoms of a disability; (2) establishes that the Veteran suffered an event, injury, or disease in service; and (3) indicates that the claimed disability or symptoms may be associated with the established event, injury, or disease in service. The third part could be satisfied by competent evidence showing post-service treatment for a condition or other possible association with military service. 38 C.F.R. § 3.159(c)(4). The threshold for establishing the third element is low for there need only be evidence that "indicates" that there "may" be a nexus between the current disability and military service. Id.

The Board acknowledges that VA treatment records contain the report of a March 2, 2010 CT scan of the head that includes as part of the report text the following: "There are degenerative changes of the cervical spine." However, no impression was given. Furthermore, there are no VA treatment records showing complaints of symptoms relating to the Veteran's cervical spine (neck) or a diagnosis of any cervical spine (neck) disorder. The September 2011 private physician's statement of opinion does not set forth a diagnosis of a cervical spine disorder but refers primarily to the "back" and notes "loss of curvature of cervical . . . lordosis." 

The parties agreed in the JMPR that this evidence appears to satisfy the first McLendon criterion, i.e., evidence of a current disability. The Board agrees that this evidence is suggestive of a current disability.

As to the second McLendon criterion, an in-service event, the parties agreed that it appears that there may be evidence of an "in-service problem" that would meet the criterion as the Veteran told two separate examiners he hurt himself in service carrying his pack, running, and lifting heavy ordinance, and the Board did not find the Veteran's report lacking in credibility.

A September 2011 letter from a private physician states that the Veteran "injured his back while on active service as a result of lifting and carrying heavy equipment," that he "used to have his backpack and guns carried on his back," that he "did a lot of maneuvers at training that compromises his back with a lot of strain," and that he "used to lift and carry mortars, also munitions for heavy weapons." However, on VA spine examination in May 2013, it is reported that the Veteran merely claimed that "his back pain started during training after he fell down hill with multiple back traumas." In addition, on VA psychiatric examination at the same time, it was also noted that the Veteran reported that he "fell down injuring his back while in active duty in Panama." 

In addition, Veteran's attorney submitted a statement from the Veteran's wife in October 2016 in which she indicated that she asked the Veteran if he felt pain in his neck when he fell and hurt his back during his service in Panama, and he responded yes. On remand, the AOJ must consider this new evidence when readjudicating the Veteran's claim.

As to the third McLendon criterion, the parties agreed that the September 2011 private physician's medical opinion may be sufficient to meet this criterion but the Board did not discuss it. This private physician stated that the activities set forth by the Veteran as having done in service "puts a lot of strain at [the] back area causing continuous spasm and inflammatory changes which in the long term can cause degenerative changes at [the] column area. These problems cause at the same time bad posture, loss of correct alignment and loss of curvature of cervical, thoracic and lumbar lordosis, putting more stress in the one side of the vertebras than the other and by consequence patient could present disc bulging and herniation ...." Thus, it appears that this private physician's opinion suggests that the activities the Veteran's participated in during service could affect the cervical spine as well as the lumbar spine ("back") which was the specific body area that her opinion was addressing. 

In October 2016, the Veteran's attorney submitted a brief setting forth that the Veteran experienced a fall during his service in Panama where he hurt his back; the VA granted service connection for his current lumbar condition in relation to this fall; and, since this fall, he has been suffering from cervical spine pain as well (pointing to the statement from the his wife submitted with the brief). The attorney argued that this lay evidence links the Veteran's current cervical spine disorder to an event in service, and requested that the claim be remanded for a medical opinion regarding the etiology of the diagnosed degenerative changes of the cervical spine.

Based upon the foregoing, that there is evidence suggestive of a current disability, an in-service injury and or event, and an indication of a relationship between the two, the Board finds that the evidence is sufficient to trigger VA's duty to assist in obtaining a VA examination or medical opinion. Thus, remand is required to fulfill VA's duty to assist in developing this claim.

With regard to the claim for an acquired psychiatric disorder, the parties agreed in the JMPR that there was an underlying incorrect factual predicate with the 2013 VA examiner's opinion and rationale in that the VA examiner stated that there was no other diagnosed mental disorder, which was in direct contradiction to the private physician's September 2011 letter and a September 2010 VA treatment record, which indicate the Veteran had anxiety and depression related to his back and an Axis I diagnosis of depression, respectively. The parties agreed that, given this, the Veteran's claim should be remanded so that he could receive a new VA examination and opinion regarding his claim.

The Board also notes that there appear to be other factual errors in the May 2013 VA examination that render that examination inadequate, such as the fact that the VA examiner stated the Veteran had never been treated with psychiatric medications when the VA treatment records clearly show he was prescribed Citalopram for his depression from September 2010 through approximately February 2014. Furthermore, his computerized Problem List clearly shows "Depression, NOS" as one of his treated conditions. 

Furthermore, the Board notes that the VA examiner stated that the Veteran was not service-connected for his back disability. That might have been true at the time of that examination; however, the Veteran is now service-connected for his lumbar spine disability. Thus, a secondary service connection opinion is necessary.

Finally, the VA treatment records show that the Veteran appears to have continued to have episodes of depressive symptoms. Although he had negative PHQ-2 Depression Screenings in 2013 and 2014, it was commented on that he reported feeling sad and hopeless most of the time, and having sleep and appetite changes. Consequently, there is evidence that the Veteran continues to have depressive symptoms despite treatment. 

Consequently, the Board finds that remand is warranted to obtain a new VA examination or medical opinion as warranted to comply with the JMPR and VA's duty to assist.

With regard to VA examination, however, the Board acknowledges the attorney's October 2016 statement that the Veteran is bedridden and must be transported to the VA examination by ambulance. The Board is sympathetic to the Veteran's situation, and has requested that the AOJ determine the feasibility of scheduling the Veteran for an examination using alternate means, including VA fee-basis examinations, or even performing the examinations at his home. Cf. Bolton v. Brown, 8 Vet. App. 185 (1995). In the event that an examination is unable to be performed, the Board has alternately, requested the AOJ obtain medical opinions based on a review of the virtual file, including the Veteran's medical records and previously submitted statements. 

Finally, as to the claim for a TDIU, the Board finds that this claim is inextricably intertwined with the other claims on appeal as the outcome of those claims may have an effect on this one. Thus, the claim for a TDIU is remanded as well pending resolution of the Veteran's other claims.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Associate with the claims file the Veteran's outstanding VA and non-VA treatment records, including those from the VA Medical Center in San Juan, Puerto Rico, from November 2014 to the present. 

2. Thereafter, schedule the Veteran for the following VA examinations, including using alternate means as the Veteran's attorney indicates that he can only attend a VA examination if he travels via ambulance. If the Veteran cannot travel for a VA examination, to include examination on a fee-basis, the AOJ should attempt to use alternate means to evaluate the Veteran, i.e., arrange for the examination to be conducted at the Veteran's residence (either on a fee-basis or have a VA employee who can travel go to the residence to conduct the examination); or, if the Veteran is in a nursing home or other care facility, requesting that an evaluation be completed by facility medical staff; or consider the possibility of assessment via remote conferencing, including telephonic, techniques. All such attempts should be documented in the record. If, and only if, the Veteran is unable to appear for any examination after exhausting attempts to use alternate means, the provider is asked to render the opinion(s) requested based upon a review of the record given that the Veteran is bedridden and is likely unable to appear for examination. The claims file must be provided to each examiner for review in conjunction with the examination.

Cervical Spine Examination - After reviewing the file and conducting any necessary testing, the examiner should render a diagnosis as to whether the Veteran has any other disorder related to his cervical spine. If any disorder is found, the examiner should than render an opinion as to whether it is at least as likely as not (i.e., at least a 50 percent probability) that each current disorder found on examination is related to any disease or injury incurred during service. In rendering an opinion, the examiner should consider and discuss medical evidence (specifically the May 2010 CT scan of the head showing degenerative changes of the cervical spine), the Veteran's statements regarding in-service activities and/or injury as seen in the September 2011 private physician's statement and the May 2013 VA examination reports, the October 2016 statement from the Veteran's wife, and the September 2011 private physician's statement indicating a possible relationship between the Veteran's in-service activities and "bad posture, loss of correct alignment and loss of curvature of cervical, thoracic and lumbar lordosis, putting more stress in the one side of the vertebras than the other and by consequence patient could present disc bulging and herniation."

Mental Disorders Examination - After reviewing the file and conducting any necessary testing, the examiner should:

a. Identify all psychiatric diagnoses rendered during the course of the appeal (since September 2011). VA treatment records show Axis I diagnoses of Depression, Not Otherwise Specified, rule out Depression Due to a Medical Condition, and Mild Subcortical Dementia by History in September 2010 and treatment thereafter with Citalopram with continued complaints of feeling sad and hopeless, sleep changes and appetite changes and a September 2011 letter from Dr. Ortiz indicating the Veteran had anxiety and depression; and 
b. As to each, including depression and anxiety, render an opinion as to whether it is at least as likely as not (i.e., at least a 50 percent probability) that such mental disorder is proximately due to service; and 
c. As to each, including depression and anxiety, render an opinion as to whether it is at least as likely as not (i.e., at least a 50 percent probability) that such mental disorder is proximately due to or the result of the Veteran's service-connected lumbar spine disability. In rendering an opinion, the examiner should consider and discuss the September 2011 private physician's statement relating that the Veteran's "nervous problems" are due to his back pain; and
d. As to each, including depression and anxiety, render an opinion as to whether it is at least as likely as not (i.e., at least a 50 percent probability) that such mental disorder is aggravated by the Veteran's service-connected lumbar spine disability. 

Functional Impact of Service Connected Disabilities Opinion - After reviewing the file, the examiner/opinion provider should describe in detail, the functional limitations of any and all disabilities related to service or a service-connected disability (currently only lumbar degenerative joint disease).

The examiners should provide a complete explanation for all opinions given. If the examiners cannot provide an opinion without resorting to speculation, the examiners should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made. 

3. After all requested development has been completed (including the adequacy of the examinations and medical opinions obtained), readjudicated all of the Veteran's claims with consideration of all evidence received since the October 2014 Statement of the Case. If such action does not resolve the claims, a Supplemental Statement of the Case should be issued to the Veteran and his representative. An appropriate period of time should be allowed for response. Thereafter, these claims should be returned to this Board for further appellate review, if in order. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M.C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs